```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
SMARTSKY NETWORKS, LLC,        )
                               )
              Plaintiff,       )
                               )
         v.                    )
                               )
WIRELESS  SYSTEMS  SOLUTIONS   )     1:20-cv-834
LLC, DAG WIRELESS LTD, DAG     )
WIRELESS USA LLC, LASLO GROSS, )
SUSAN  GROSS,  and  DAVID  D.  )
GROSS,                         )
                               )
              Defendants.      )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

   This case arises from the fraught business relationship of
Plaintiff SmartSky Networks, LLC ("SmartSky") and Defendant
Wireless Systems Solutions, LLC ("Wireless"). Although the
parties bring multiple claims against one another and several
motions remain pending, recent developments in the parties'
concurrent arbitration proceedings have narrowed the issues before
the court. On December 22, 2020, a panel of arbitrators with the
American Arbitration Association ("AAA") determined, based upon
the arbitration provision within the parties' operative agreement,
that all disputes between SmartSky and Wireless relating to their
performance under that agreement must be resolved through
arbitration, with the exception of requests for interim relief.
(Doc. 145-1.) In light of this decision, the parties agreed to

consolidate all claims between them and submit their dispute to the arbitral panel for resolution, with the exception of SmartSky's motions for preliminary injunction.[1] (Doc. 145 at 8; Doc. 146 at 1-2; Doc. 147 at 2 n.1; see also Doc. 145-3.)

Before the court are the motions of SmartSky for preliminary injunctive relief (Docs. 2, 67); the motion of Defendants Wireless, Laslo Gross ("L. Gross"), and Susan Gross ("S. Gross") to stay these proceedings pending arbitration (Doc. 144); and the motion of Defendant DAG Wireless USA, LLC ("DAG USA") to dismiss these proceedings in light of the ongoing arbitration proceedings (Docs. 78, 109).[2] Also before the court are multiple motions to seal various submissions (Docs. 3, 21, 37, 48, 70, 92, 126) and motions to redact certain transcripts (Docs. 139, 140). For the reasons set forth below, the motion to stay will be granted, the motion to dismiss will be denied, and SmartSky's motions for preliminary

---

[1] Although SmartSky has indicated that it is "willing to agree to arbitrate all of its damages claims, including its claims against DAG USA and DAG Israel, if its Motion for Preliminary Injunction is determined by this Court," (Doc. 134 at 6 (emphasis added)), its later communication with the arbitral panel shows that it has agreed to submit all damages claims to arbitration without condition (see Doc. 145-3). (See also Doc. 147 at 2 n.1 ("SmartSky agrees with [Wireless] that the only matter before the Court is whether it should stay the pending motions for preliminary injunction . . . as the Parties have agreed to arbitrate all other claims and counterclaims for damages.") SmartSky still requests, however, that the court decide its motions for preliminary injunction. (See Doc. 147.)

[2] DAG USA also moved to compel arbitration. (Docs. 78, 109.) In light of the parties' subsequent agreement to voluntarily submit their dispute to arbitration, with the exception of SmartSky's motions for preliminary injunction (Doc. 147-3), DAG USA's motion to compel arbitration is moot.

2

injunction will be denied without prejudice. Additionally, the court will grant in part SmartSky's motion to seal the complaint and memorandum in support of the motion for preliminary injunction (Doc. 3) and grant its motions to redact certain transcripts. The motions to seal will otherwise be denied.

I. **BACKGROUND**

The facts, as relevant to the issue before the court, show the following:

SmartSky is a Delaware limited liability company involved in the development of an air-to-ground wireless communications network. (Doc. 5 ¶¶ 9, 23.) Wireless is a North Carolina limited liability company managed by L. Gross and S. Gross that is focused on developing cellular capabilities and producing components for use in wireless transmissions. (Id. ¶¶ 10, 30-31; Doc. 145 at 1-2.) Through several agreements entered into between December 2017 and April 2019, Wireless agreed to develop and build proprietary components for use in SmartSky's wireless communications network. (Doc. 5 ¶¶ 34-38, 44; Doc. 104 at 3.)

During that same period, L. Gross and S. Gross, along with Defendant David Gross ("D. Gross"), established Defendant DAG Wireless Ltd. ("DAG Israel"). (Doc. 5 ¶ 36.) D. Gross, who was an executive with Wireless, served as the head of DAG Israel. (Id.) Later, in June 2019, all three Gross Defendants established DAG USA as a North Carolina limited liability company, with DAG

3

Israel serving as its managing member and D. Gross serving as its registered agent. (Id. ¶ 48.)

In April 2019, SmartSky and Wireless executed a Teaming Agreement that outlined each party's respective rights and responsibilities in relation to Wireless's production of components for SmartSky. (Doc. 5-1.) The Teaming Agreement provided that "disputes relating to or arising under this agreement shall be submitted to binding arbitration" for resolution. (Id. at 13, ¶ 14.05.) The Teaming Agreement also permitted each party to pursue equitable relief but did not specify whether such relief must be sought through arbitration or the courts. (Id. at 20, ¶ 20.7.)

Sometime after execution of the Teaming Agreement, the relationship between the parties soured. On September 3, 2020, following an unsuccessful mediation, Wireless brought an action against SmartSky in North Carolina Superior Court for breach of contract. (Doc. 22-1.) On September 10, 2020, SmartSky filed the present action against Defendants, alleging, among other claims, misappropriation of trade secrets and multiple breaches of contract. (Docs. 1, 5.) Then, on September 14, 2020, SmartSky filed a demand for arbitration with the AAA against Wireless, bringing three claims for breach of contract. (Doc. 22-2.) At this point in time, the parties disagreed as to whether all of the claims between SmartSky and Wireless were required to be

4

arbitrated, or whether only certain breaches of contract were subject to arbitration. (<u>See</u> Doc. 36 at 24-25; Doc. 79 at 7-11; Doc. 104 at 15-18.)

Senior District Judge N. Carlton Tilley, Jr., held a hearing on SmartSky's motions for preliminary injunction on December 7, 2020. (Doc. 121.) At the close of the first day of testimony, Judge Tilley discovered a conflict of interest and recused himself from further consideration of the case. (<u>Id.</u> at 150.) The preliminary injunction hearing was suspended, and the case was reassigned. (Doc. 119.) Shortly following the reassignment of the case, and while multiple motions were pending before the court, on December 22, 2020, the arbitral panel issued a procedural order that concluded that all claims between SmartSky and Wireless were subject to mandatory arbitration under the Teaming Agreement, with the exception of interim relief which could be decided either by the court or the panel. (Doc. 145-1.) In light of this decision, the parties agreed to consolidate all pending claims between them in the arbitration, except SmartSky's motions for preliminary injunction. (Doc. 145 at 8; Doc. 146 at 1-2; Doc. 147 at 2 n.1; <u>see also</u> Doc. 145-3.) DAG Israel, DAG USA, L. Gross, S. Gross, and D. Gross were subsequently added as parties to the arbitration. (Doc. 145-3.) The arbitral panel is scheduled to hear the case starting on May 10, 2021. (Doc. 146 at 3.)

Defendants Wireless, L. Gross, and S. Gross have moved to

stay proceedings pending arbitration. (Doc. 144.) SmartSky partially opposes the motion and, while agreeing that all other proceedings should be stayed, requests that the court hear and decide its motions for preliminary injunction. (Doc. 147; see also Docs. 2, 67.) Meanwhile, Defendant DAG USA has moved for dismissal of the action in light of the pending arbitration[3] (Docs. 78, 109), which SmartSky opposes (Docs. 104, 134). The parties have also filed multiple motions to seal and redact transcripts. (Docs. 3, 21, 37, 48, 70, 92, 126, 139, 140.) The motions are now fully briefed and ready for resolution. (See Docs. 24, 41, 79, 80, 141, 145, 146, 148.)

## II. ANALYSIS

### A. Preliminary Injunction

As discussed above, the parties agree that all issues in this case are subject to arbitration and that this court, under the Teaming Agreement, may hear and decide motions for interim relief, or may defer that question to the arbitration panel. (Doc. 145 at 8; Doc. 146 at 1–2; Doc. 147 at 2 n.1; see also Doc. 147-3.) In the present action, SmartSky seeks two preliminary injunctions. First, it asks that the court issue a preliminary injunction to prevent Defendants from infringing upon its intellectual property

---

[3] As discussed in note 2, supra, DAG USA has also moved to compel arbitration. (Docs. 78, 109.) As the parties have since agreed to submit their claims to arbitration, this motion is moot.

6

and engaging in anti-competitive activities. (Doc. 2.) Second, it asks the court to enjoin Defendants from falsely advertising that they have developed or obtained regulatory certification for an air-to-ground wireless communications systems and from promoting its associated products available for commercial sale. (Doc. 67.) SmartSky requests that the court exercise its discretion to decide both motions. (Docs. 134, 147.) Defendants oppose this request and argue that it would be more efficient to have SmartSky's motions for preliminary injunction determined by the arbitral panel. (Docs. 145, 146, 148.)

The Fourth Circuit has held that a district court has the authority to issue a preliminary injunction regarding an arbitrable dispute "to preserve the status quo pending arbitration . . . if the enjoined conduct would render that process a 'hollow formality.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1053 (4th Cir. 1985). "The arbitration process would be a hollow formality where the arbitral award when rendered could not return the parties substantially to the *status quo ante*." Id. (internal quotation marks omitted). Most circuit courts of appeal apply a similar standard. See, e.g., Am. Express Fin. Advisors, Inc. v. Thorley, 147 F.3d 229, 231 (2d Cir. 1998); Specialty Bakeries, Inc. v. Halrob, Inc., 129 F.3d 726, 727 (3d Cir. 1997); IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 527 (7th Cir. 1997); PMS Distrib. Co. v. Huber & Suhner, A.G., 863

7

F.2d 639, 642 (9th Cir. 1988); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986); but see Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46, 48 (8th Cir. 1994) (generally, a district court should not issue preliminary injunctions regarding an arbitrable dispute). A preliminary injunction should be issued to "preserve the status quo" where an injunction is necessary to protect the integrity of the arbitration process. See Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 813 (3d Cir. 1989) (cited approvingly in Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353 (4th Cir. 1991), overruled on other grounds by Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (2009)). As such, a court may issue a preliminary injunction in an arbitrable dispute to preserve the arbitration process, but not to supplant it. See id. at 814. This aligns with the strong federal policy favoring arbitration in that it allows district courts to issue an injunction for the purpose of ensuring that arbitration is productive and meaningful. See Bradley, 756 F.2d at 1054.

In the instant case, the issuance of the requested preliminary injunctions would not preserve the integrity of the arbitration process. Quite the contrary. The facts and arguments underlying SmartSky's motions for preliminary injunction are largely the same as those at issue in the parties' arbitration proceedings. As such, if the court were to issue a preliminary injunction on either matter requested by SmartSky, the court would duplicate, if not

8

essentially supplant, the role of the arbitrator. In holding a hearing on these motions, the court would have to analyze both the specifics of SmartSky's claims and the facts underlying the parties' dispute in order to make a determination regarding the likelihood of success on the merits. Were the court to issue an injunction against Defendants, the court would make findings of fact and conclusions of law to enjoin Defendants from producing, advertising, and selling some of its products. In so doing, the court's issuance of an injunction would interfere with the arbitral panel's ability to decide the merits of the case and may very well undermine the arbitration process.

Other courts faced with similar factual circumstances have reached the same determination. See, e.g., DXP Enters., Inc. v. Goulds Pumps, Inc., No. CIV.A. H-14-1112, 2014 WL 5682465, at *7 (S.D. Tex. Nov. 4, 2014) (declining to consider plaintiffs' arguments regarding preliminary injunctive relief where such an injunction would moot the pending arbitration); Haide Grp., Inc. v. Hyosung Corp., No. 10-02392, 2010 WL 4456928, at *3-4 (E.D. Pa. Nov. 8, 2010) (the court "must be mindful not to supplant the role of the arbitrator in determining whether injunctive relief is appropriate"); H2O To Go, LLC v. Martinez, No. 05-21353, 2005 WL 2065220, at *4-5 (S.D. Fla. Aug. 22, 2005) ("[The] arbitration clause alters the authority of the Court significantly in deciding whether, and to what extent, a preliminary injunction should be

entered."); <u>Baychar, Inc. v. Frisby Techs.</u>, No. 01-CV-28-B-S, 2001 WL 856626, at *9 (D. Me. July 26, 2001) (declining to issue a preliminary injunction when doing so would require the court to rule on the merits of the controversy and would "usurp the role of the arbitrator"). As the court's consideration of SmartSky's motions for preliminary injunction would similarly undermine the ongoing arbitration proceedings, and because the arbitral panel will be reaching the merits of this dispute in mere weeks, the court declines to hear and decide these motions. Accordingly, these motions will be denied without prejudice.

**B. Disposition Pending Arbitration**

Defendants Wireless, L. Gross, and S. Gross have filed a motion to stay proceedings pending arbitration (Doc. 144), while Defendant DAG USA has filed a motion to dismiss the complaint in light of the arbitration proceedings (Docs. 78, 109). SmartSky opposes dismissal of this action.[4] (Docs. 104, 134.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et seq.</u>, provides in pertinent part, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay

_____

[4] SmartSky also opposes staying proceedings to the extent the court will not consider its motions for preliminary injunction. (Doc. 147 at 1.) For the reasons discussed, <u>supra</u>, the court will dismiss these motions without prejudice. Beyond that issue, SmartSky does not oppose the motion to stay. (<u>See</u> <u>id.</u>)

the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Id. § 3. Circuit courts are split as to whether courts retain discretion under this provision to dismiss actions subject to arbitration. Multiple circuit courts have found that the FAA mandates that actions be stayed pending arbitration. See Quinn v. CGR, 828 F.2d 1463 (10th Cir. 1987); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992); Tice v. Am. Airlines, Inc., 288 F.3d 313, 318 (7th Cir. 2002); Lloyd v. Hovensa, LCC, 369 F.3d 263, 269 (3d. Cir. 2004); Katz v. Cellco P'ship, 794 F.3d 341, 345-46 (2d. Cir. 2015). Other circuits have concluded that courts may dismiss actions subject to arbitration if all issues are arbitrable. See Sparling v. Hoffman, 864 F.2d 635, 638 (9th Cir. 1988); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998). The Fourth Circuit has not definitively endorsed either interpretation. See Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 375-76 (4th Cir. 2012) (discussing, but declining to resolve, conflicting precedent because the issue was not squarely presented); compare Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999) ("When a valid agreement to arbitrate exists between the parties and covers the matters in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings.") with Choice Hotels Int'l, Inc. v. BSR Tropicana

11

_Resort, Inc._, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all the issues presented in a lawsuit are arbitrable.").

Regardless of whether the court retains the discretion to dismiss the present action, the court declines to do so. The underlying policy of the FAA is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." _Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp._, 460 U.S. 1, 22 (1983). In line with this policy goal, while the FAA permits immediate interlocutory review of an order denying a stay of proceedings, it expressly denies such review of an interlocutory order granting a stay. _See_ 9 U.S.C. § 16(a)-(b). Therefore, "[a] stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." _Katz_, 794 F.3d at 346. Meanwhile, "[t]he dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable interlocutory stay order into an appealable final dismissal order." _Id._

Here, the purposes of the FAA are best served by granting a stay pending the resolution of arbitration. A stay of proceedings will enable the parties to engage in arbitration without the specter of additional judicial proceedings in the intervening

12

period.  However, while these proceedings are stayed, the parties will be ordered to report to the court every 90 days regarding the status of the arbitration proceedings.

### C.  Motions to Seal

The parties have filed multiple motions to seal that remain pending.  (See Docs. 3, 21, 37, 48, 70, 92, 126.)  Only one of these motions is relevant to the matter before the court: SmartSky's motion to seal its complaint, its memorandum in support of its motion for preliminary injunction, and the exhibits submitted therewith, including the Teaming Agreement (Doc. 3). Defendants Wireless, L. Gross, and S. Gross oppose the motion. (Doc. 24.)  SmartSky has also moved to redact transcripts of certain testimony given before Judge Tilley on November 23, 2020 (Doc. 139), and December 7, 2020 (Doc. 140), which the court will consider herein.  Defendants have filed no opposition to these motions.

When a party makes a request to seal judicial records, a district court "must comply with certain substantive and procedural requirements." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004).  Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal

13

over the alternatives.  Id.  "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake."  Id. (internal quotation marks and alteration omitted).  "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents," such as materials filed in connection with a summary judgment motion.  Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted).

SmartSky filed a motion to seal its unredacted complaint (Doc. 5), its unredacted memorandum in support of its motion for preliminary injunction ("the memorandum") (Doc. 6), and certain exhibits, including the Teaming Agreement (Doc. 5-1).  (Doc. 3.) The parties' briefing suggests that the common law right of access applies to these documents.  (See Doc. 4 at 2 (applying common law standard requiring "countervailing interests heavily outweigh the public interest in access" articulated in Rushford v. The New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988)); Doc. 24 at 2 (same).)  As the documents at issue are those filed in connection with SmartSky's complaint (and, indeed, the complaint itself) and its motion for preliminary injunction, the court agrees.  See also P&L Dev. LLC v. Bionpharma Inc., No. 1:17CV1154, 2019 WL 2079830,

14

at *2 (M.D.N.C. May 10, 2019) ("The common law right of access applies to a complaint . . . and likely to documents attached to a complaint." (internal citations omitted)); Agro v. Makhteshim Agan of N. Am., Inc., No. 1:10CV276, 2011 WL 13157168, at *3 (M.D.N.C. July 13, 2011) ("[T]here is no First Amendment right of access to the documents regarding Plaintiffs' motion for a preliminary injunction."); Spence v. ITC Deltacom Commc'ns, Inc., No. 5:07-CV-15-BR, 2007 WL 9718658, at *1 (E.D.N.C. July 30, 2007) (applying common law right of access to sealing portions of complaint where the complaint was not verified, portions sought to be sealed were not necessary to an understanding of the claims, and the court had not yet adjudicated any substantive rights); Phillips v. Pitt Cty. Mem'l Hosp., Inc., No. 4:05-CV-97-F(3), 2005 WL 8159207, at *1 (E.D.N.C. Sept. 6, 2005) (applying common law right of access to sealing complaint and attached exhibits).

"The common law presumes a right to inspect and copy judicial records and documents." Stone, 855 F.2d at 180 (citation omitted). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interest in access." Rushford, 846 F.2d at 253. "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Id. (citation omitted). The factors to be weighed in the common-law balancing test include the following: "whether the records are

15

sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984) (citation omitted); see also Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)(noting that public access may be inappropriate for "business information that might harm a litigant's competitive standing"). This same standard has been applied in relation to motions to redact transcripts. See Lebron v. Rumsfeld, No. 2:07-CV-00410-RMG, 2011 WL 13196499, at *1 (D.S.C. Jan. 19, 2011); Bethesda Softworks, LLC v. Interplay Entm't Corp., Civil Action No. DKC 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010).

As a threshold matter, SmartSky's motions meet the preliminary procedural requirements. The motion to seal was filed on September 10, 2020, and has been available for public viewing since that time. (See Doc. 3.) Similarly, its motions to redact certain transcripts were filed and have been available for public viewing since January 12, 2021. (See Docs. 139, 140.) No third parties have objected to these motions. As such, the court may consider whether any significant interest outweighs the public's right of access to these documents.

SmartSky first argues that specific portions of the complaint

16

and memorandum, as well as the Teaming Agreement, should be sealed because they contain information subject to confidentiality agreements between itself and Wireless. (Doc. 4 at 3-4.) In response, Wireless argues that confidentiality alone is not a significant countervailing interest that outweighs the public's right of access. (Doc. 24 at 2-3.) The court agrees. "Even though the parties may treat information as confidential among themselves, . . . the standards for maintaining such protection change once that information is filed with the Court in litigation." P&L Dev., 2019 WL 2079830, at *8. Here, SmartSky has failed to identify any reason, beyond its confidentiality agreement with Wireless, as to why these portions of the record should be sealed. Further, these documents contain certain information that is key for the public to understand these proceedings — in particular, the arbitration provision within the Teaming Agreement. (See Doc. 5-1 at 13-14, ¶ 14.05.) Less drastic alternatives short of sealing, such as filing a redacted copy of the Teaming Agreement, are certainly available, particularly in light of the court's decision to defer the merits-related injunctive relief issue to the arbitration panel.[5] Without a significant countervailing interest, and in light of Wireless's

---

[5] Although SmartSky provided redacted versions of the complaint (Doc. 1) and memorandum (Doc. 2-1), it has not provided a redacted version of the Teaming Agreement.

17

opposition and the availability of less drastic alternatives, the court declines to seal these documents based solely upon SmartSky's claim of confidentiality.

SmartSky also argues that specific portions of the complaint and memorandum, as well as specified portions of the hearing transcripts from November 23, 2020, and December 7, 2020, should be sealed because they contain confidential business information, including information about former vendors, current manufacturers, and certain trade secrets. (Doc. 4 at 4; Doc. 139; Doc. 140.) Wireless argues that SmartSky has not adequately supported these contentions such that sealing would be appropriate. (Doc. 24 at 3.) The court has reviewed the specified portions of the record and is satisfied that these materials do contain confidential business information, including information relevant to trade secrets and business dealings with third parties not involved in the present litigation. This is a significant countervailing interest. Additionally, the information sought to be sealed is not essential for the public's understanding of these proceedings. Both the complaint and memorandum are comprehensible, despite the sealed portions (see Docs. 1, 2-1), and the portions of the transcript sought to be redacted are not essential to understanding the relevant testimony (see Docs. 103, 121). Further, there appears to be no less drastic measure available. As such, the court will grant SmartSky's motion to seal the specified portions

18

of the complaint and memorandum to the extent that request is based on the protection of confidential business information (see Doc. 4 at 3-4), and grant its motion to redact specified portions of the transcripts from the hearings on November 23, 2020 (Doc. 139 at 3), and December 7, 2020 (Doc. 140 at 3-4). The portions of the record to be sealed or redacted are as follows:

- The complaint (Doc. 5) shall be redacted and sealed at ¶¶ 53-54, 56, 64, 71-72, 83-84, 91, 93-94, 96, 117, 128, 169, 182, and 273;

- The memorandum in support of preliminary injunction (Doc. 6) shall be redacted and sealed at pages 9-11;

- The transcript of proceedings on November 23, 2020 (Doc. 103) shall be redacted and sealed at citations 46:10-11; 48:20-22; 57:6; 58:15-24; 61:10-65:13; 67:24-69:9; 69:13, 19; 70:3-5; and 75:9-10;

- The transcript of proceedings on December 7, 2020 (Doc. 121) shall be redacted and sealed at citations 47:22-23; 58:20-24; 59:1; 61:24-62:1; 68:2-3; 69:8-9; 80:3-15, 18-19; 87:2-24; 100:25; 101:2-4, 14-20; 102:7-8; 118:18, 25; 119:2; 121:10-13; 123:12, 21-25; 125:14; 126:24-129:24; 130:10-23; 131:13; 133:5, 11-17; 134:14-16, 22, 25; 138:18-140:15; and 149:14-15; and exhibits 1-A, 77, 2, 24-26, 14-A, 53, and 62 submitted during

19

those proceedings will be sealed.[6]

Because SmartSky's redacted filings are not limited to these redactions, it is directed to file redacted versions of the complaint and memorandum that align with this decision within ten days.

SmartSky seeks to seal five other documents submitted in support of its complaint. (See Doc. 4; see also Docs. 5-2-5-6.) As the court did not rely on these documents in deciding the present motions, and for the reasons discussed herein, SmartSky's motion to seal will be denied as moot to the extent it addresses these documents. SmartSky may withdraw these documents and file redacted versions with the court.

As to the remaining motions to seal (see Docs. 21, 37, 48, 70, 92, 126), the court declines to consider them. The court did not rely on these documents in relation to the present motions, and the parties have agreed to submit their dispute to arbitration. These motions are therefore moot. The parties will be given ten days to withdraw these documents and their pending motions to seal. See United States v. Dunlap, 458 F. Supp. 3d 368, 372 (M.D.N.C. 2020) (permitting party to withdraw sealed documents and refile with redactions). If not withdrawn in that time, the documents

---

[6] Exhibit 2 is sealed only to the extent it does not include the Teaming Agreement. For the reasons discussed, supra, the court declines to seal the Teaming Agreement.

20

will be unsealed.

**D.  Other Pending Motions**

In light of the parties' agreement to submit the entirety of their merits dispute to the arbitral panel for resolution, the remaining pending motions are now moot. (See Docs. 15, 17 (requests for oral argument); Doc. 68 (motion for sanctions); Doc. 125 (request for status conference); Doc. 142 (motion to order the parties to mediation).) These motions will not be considered at this time, and proceedings will be stayed pending arbitration.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that:

1.  The motions of SmartSky for preliminary injunctive relief (Docs. 2, 67) are DENIED WITHOUT PREJUDICE;

2.  The motion of Defendants Wireless, L. Gross, and S. Gross to stay proceedings pending arbitration (Doc. 144) is GRANTED and these proceedings will be STAYED pending arbitration;

3.  The motion of Defendant DAG USA to dismiss is DENIED, and the motion to compel arbitration (Docs. 78, 109) is DENIED AS MOOT;

4.  The motion of SmartSky to seal certain portions of its complaint and memorandum in support of its motion for preliminary injunction (Doc. 3) is GRANTED to the extent that the documents reveal confidential business information as claimed, but is

21

otherwise DENIED, and SmartSky should file redacted versions of these documents for public view in accordance with this decision;

5.   The motions of SmartSky to redact certain transcripts of proceedings that occurred on November 23, 2020 (Doc. 139) and December 7, 2020 (Doc. 140) are GRANTED; and

6.   All other pending motions to seal (Docs. 21, 37, 48, 70, 92, 126) are DENIED.  The parties shall have ten days from the date of this order to withdraw these documents and their pending motions to seal, or they will be unsealed.

IT IS FURTHER ORDERED that while these proceedings are stayed, the parties are to report jointly to this court the status of the arbitration proceedings every 90 days.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge

March 11, 2021