IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SMARTSKY NETWORKS, LLC, a Delaware limited liability company, ) ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-000834 |
| ) | |
| WIRELESS SYSTEMS SOLUTIONS, LLC, a Delaware limited liability company; DAG WIRELESS LTD, an Israeli company; DAG WIRELESS USA, LLC, a North Carolina limited liability company; LASLO GROSS, a North Carolina resident; SUSAN GROSS, a North Carolina resident; DAVID D. GROSS, a resident of Israel ) ) ) ) ) ) ) ) ) ) ) ) | |
| ) | |
| Defendants. ) ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief United States District Judge.

This matter comes before the court following an American Arbitration Association ("AAA") Tribunal's ("Tribunal") final Arbitration Award issued on October 1, 2021 (the "Final Award"). (Doc. 166-1.) Plaintiff SmartSky Networks, LLC ("SmartSky") filed the present Motion to Confirm Arbitration Award and for Entry of Final Judgment pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. (Doc. 166.) Defendants DAG Wireless, Ltd., DAG Wireless, USA, and David Gross (collectively "the DAG Defendants") then moved to vacate the arbitration award pursuant to FAA § 10(a).

(Doc. 167.) Separately, Defendants Wireless Systems Solutions, LLC ("Wireless Systems"), Laslo Gross, and Susan Gross (collectively "the Wireless Systems Defendants") filed a similar Motion to Vacate and Modify the Final Arbitration Award. (Doc. 170.) The parties have also separately filed motions to seal certain documents. (Docs. 177, 181.) In addition, the DAG Defendants have filed a Motion to Dismiss or Compel Arbitration dated June 30, 2021. (Doc. 160.)

For the reasons to follow, the motion to confirm the Arbitration Award will be granted, the motions to vacate will be denied, and because the arbitration has been completed, the motion to dismiss will be denied as moot.

## I. BACKGROUND

SmartSky develops air-to-ground wireless communications networks. (Doc. 5 ¶¶ 9, 23.) Wireless Systems, controlled by Susan and Laslo Gross, focuses on developing cellular capabilities and producing components for use in wireless transmissions. (Id. ¶¶ 10, 30-31; Doc. 145 at 1-2.) Wireless Systems entered several agreements with SmartSky to develop and build proprietary components for use in SmartSky's communications network. Central to this case is the parties' Teaming Agreement, which set forth the contractual terms between SmartSky and Wireless Systems. (Doc. 5 ¶¶ 34-38, 44; Doc. 104 at 3.) During that same period, Susan and Laslo Gross, along with their son David Gross, established DAG

2

Wireless Ltd., which is engaged in developing technology for wireless communication. (Doc. 5 at ¶¶ 39-42.) This business relationship between SmartSky and Wireless Systems soon soured, and on September 10, 2020, SmartSky filed this lawsuit against the Wireless Systems and DAG Defendants alleging ongoing breaches of the intellectual property and confidentiality provisions of the Teaming Agreement as well as misappropriation of trade secrets. (Docs. 1, 5.)

Soon thereafter, pursuant to the Teaming Agreement -- which required "disputes relating to or arising under this agreement" to be resolved by binding arbitration -- SmartSky filed a Statement of Claims with the AAA on September 14, 2020, asserting claims for breach of contract. (Doc. 166 at 2.) On September 30, 2020, Wireless Systems filed counterclaims against SmartSky in the arbitration for various alleged breaches of the parties' agreements and breach of the implied contractual duty of good faith and fair dealing. (Id. at 3.) Wireless Systems later amended its counterclaims to include claims against SmartSky for unfair and deceptive trade practices and fraudulent inducement to contract. (Id.)

On December 11, 2020, Wireless Systems filed a brief with the Tribunal arguing that all claims and counterclaims between the parties were subject to arbitration. Agreeing with Wireless Systems, the Tribunal entered Procedural Order 8, stating that the

3

Teaming Agreement required all claims and counterclaims between SmartSky and Wireless Systems be arbitrated. (Doc. 166-2.) On January 13, 2021, following Procedural Order 8, the parties agreed to consolidate all pending claims and counterclaims into the arbitration, and all Defendants agreed to submit to the jurisdiction of the Tribunal and to be bound by the arbitration. (Doc. 166-1 at ¶ 48; Doc. 166-3.) On January 19, 2021, SmartSky amended its claims against the Defendants to include claims for breach of the Teaming Agreement, breach of non-disclosure agreements between SmartSky, Wireless Systems, and DAG, misappropriation of trade secrets, unfair and deceptive trade practices, false advertising under the Lanham Act, and alter ego and estoppel liability against DAG as an alter ego of Wireless Systems. (Doc. 166-1 at ¶ 50.)

On January 18, 2021, the Wireless Systems Defendants moved to stay this case pending arbitration. (Doc. 144.) On March 11, 2021, this court stayed the case pending arbitration, denied a motion to dismiss filed by DAG USA, and denied without prejudice a motion filed by SmartSky seeking a preliminary injunction because arbitration was rapidly approaching. (Doc. 149.) On January 22, 2021, the Tribunal issued Procedural Order 11, which set forth an expedited discovery process for the arbitration. (Doc. 166-1 at ¶ 53.) Discovery resulted in the exchange of "hundreds of thousands of pages of documents" and more than ten depositions,

4

including those of expert witnesses.  (Doc. 166 at 5.)

The Tribunal scheduled the final arbitration hearing to begin on May 10, 2021.  (Doc. 166-1 at ¶ 77.)  However, by as late as April 14, the Defendants had not paid their share of deposits to the AAA for the costs of the arbitration.  (Id. at ¶ 70.)  SmartSky advanced the costs and moved to strike or dismiss Wireless Systems' counterclaims with prejudice because of nonpayment.  (Id.)  In response, Wireless Systems withdrew all counterclaims against SmartSky.  (Id. at ¶ 72.)  The Tribunal then issued Procedural Order 24 directing Wireless Systems to advise the Tribunal whether the withdrawal of its counterclaims was with or without prejudice. (Id. at ¶ 74; Doc. 166-4.)

Somewhat confusingly, Wireless Systems advised the Tribunal that withdrawal of its counterclaims "was not with or without prejudice."[1]  (Doc. 166-1 at ¶ 75.)  This prompted the Tribunal to

---

[1]  The practical effect of Wireless Systems' withdrawal of its counterclaims is clear.  The Teaming Agreement required all claims arising from the agreement to be heard in arbitration as the Tribunal determined.  (Doc. 166-4 at ¶ 7.)  If Wireless Systems were allowed to withdraw its counterclaims without prejudice, it would then be able to attempt to revive those claims before an entirely different arbitration panel, thus restarting the arbitration process anew.  This scenario would defeat the purpose of arbitration, which is "the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."  Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998).  Moreover, Wireless Systems does not contend that the Tribunal lacked the legal authority to enter legal determinations such as this, which the Tribunal was clearly authorized to do.  See Rule 33 AAA Commercial Rule ("The arbitrator may allow the filing of and make rulings upon a dispositive motion"); Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC, 260 F. App'x 497, 502 (3d Cir. 2008) (noting that arbitration panels can make determinations on

issue Procedural Order 25, which declared that, because the Teaming Agreement did not contemplate "serial or overlapping arbitrations," Wireless Systems' "withdrawal of its counterclaims was thus effectively with prejudice." (Doc. 166-4 at ¶ 7.) The Tribunal stated plainly, "[t]his arbitration, as [Wireless Systems] itself argued at the start of these proceedings, is the sole mechanism for deciding such disputes." (Id.)

Arbitration then proceeded as scheduled. Between May 10 and May 21, 2021, the parties participated in in-person arbitration in Charlotte, North Carolina, presenting over ten days of evidence, 348 exhibits and thirteen witnesses, including four experts. (Doc. 166 at 6; Doc. 166-1 at ¶ 77-79.) At the close of arbitration on May 21, the Tribunal entered an order "temporarily restraining Respondents and each of them from the conduct set forth in the Proposed Interim Injunction Order" filed by SmartSky. (Id. at ¶ 81.) On June 7, 2021, the Tribunal advised that the May 21 Order would remain in effect until it was superseded by the Final Award. (Id. at ¶ 83.) In the following months, all parties submitted post-hearing briefing, exhibits, applications for attorneys' fees and costs, and responses to those applications. (Id. at ¶ 87, 88-89.)

---

dispositive motions, including on motions for summary judgment, and collecting cases). Therefore, the Tribunal's determination that Wireless Systems' dismissal was with prejudice was within its purview.

On October 1, 2021, the Tribunal issued the Final Award denying in part and granting in part SmartSky's claims. (Doc. 166-1 at ¶ 347.) The Final Award is 81 single-spaced pages consisting of 427 findings of fact and conclusions of law. On SmartSky's claim for breach of contract, the Tribunal awarded SmartSky $10,000,000 against Wireless Systems. (Id. at ¶ 276.) The Tribunal awarded the following relief against all Defendants jointly and severally:

1.    $1,963,676.59 for legal fees and expenses

2.    $525,215.45 for AAA arbitration costs

3.    $60,000 in sanctions for violating interim Orders of the Tribunal

(Id. at ¶¶ 353-424, 427(B)-(C).) The Tribunal ordered these sums to be paid on or before fifteen (15) business days from the date of the Final Award, or by October 22, 2021. (Id. at ¶ 427(C)(2).) The Tribunal also ordered that within the same time period, the Defendants "ensure that the Federal Communications Commission ("FCC") expeditiously transfers control of any and all FCC certification grants with grantee code 2AWXX" to SmartSky and "destroy all 'Confidential Information' of SmartSky Networks, LLC, 'SSN IP,' and 'Developed IP' (as those terms are defined in the Teaming Agreement . . . ) currently in their possession . . . and provide written certification" to SmartSky that the material was destroyed. (Id. at ¶ 427(A)(3).)

7

In addition, the Tribunal awarded a permanent injunction against the Defendants, enjoining them and any "entities acting in concert or participation with them" as well as any successors or assigns from:

a.  making, causing to be made, developing, certifying or attempting to certify with any government agency, using, copying, modifying, marketing, promoting, offering to sell, selling, or distributing any or all "Product" or "Developed IP" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC) developed or produced by Wireless Systems Solutions, LLC, DAG Wireless Ltd., and/or DAG Wireless USA, LLC pursuant to or in connection with any agreement executed between by SmartSky Networks, LLC and Wireless Systems Solutions, LLC, or derivatives of such "Product" or "Developed IP," for use within the "SSN Field of Use" (as that term is defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC);

b.  making or causing to be made any use or disclosure of any or all "Confidential Information" of SmartSky Networks, LLC, "SSN IP," or "SSN Tools" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC), or derivatives thereof;

c.  making or causing to be made any use or disclosure of information of SmartSky Networks, LLC subject to a non-disclosure agreement which they, or any of them, executed with SmartSky Networks, LLC, including that Non-Disclosure Agreement dated January 15, 2019;

d.  passing off all or any part of SmartSky Networks, LLC's "Confidential Information," "Product," "SSN IP," "SSN Tools," or "Developed IP" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC), including derivatives thereof, as the property of Wireless Systems Solutions, LLC, DAG Wireless Ltd., DAG Wireless USA, LLC, Laslo Gross, Susan Gross, and/or David D. Gross, including their successors and assigns; and/or

e.   engaging in any other false or misleading commercial advertising, promotions, or representations, including but not limited to statements made directly or indirectly through the use of pseudonyms or proxies, on websites, in press releases, or in interviews, which:

   i.   state or suggest that Wireless Systems Solutions, LLC, DAG Wireless Ltd., DAG Wireless USA, LLC, Laslo Gross, Susan Gross, and David D. Gross, or any of them or their successors or assigns, have developed, have obtained regulatory certification of, or have or will have available for purchase or sale any air-to-ground wireless communications system or product that uses or is based upon SmartSky Networks, LLC's "Confidential Information," "Product," "SSN IP," "SSN Tools," or "Developed IP," or derivatives thereof, in the "SSN Field of Use" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC);

   ii.   attempt to pass off or represent any "Confidential Information" of SmartSky Networks, LLC, "SSN IP," "SSN Tools," "Developed IP," or "Product" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC), or derivatives thereof, as developed by or belonging to Wireless Systems Solutions, LLC, DAG Wireless Ltd., DAG Wireless USA, LLC, Laslo Gross, Susan Gross, and/or David D. Gross, or their successors or assigns; and/or

   iii.   disparage SmartSky Networks, LLC or attempt to discourage any person or entity from doing business with SmartSky Networks, LLC.

(Id. at ¶¶ 427(A)(2)-(2)(e)(iii).)

SmartSky filed the present motion to confirm the Final Award and enter final judgment pursuant to the FAA, 9 U.S.C. § 9. (Doc. 166.) The DAG Defendants and the Wireless Systems Defendants move to vacate the Final Award (Docs. 167, 170.)

9

## II. ANALYSIS

A party moving to vacate a final arbitration award faces a "heavy burden." <u>Three S Del., Inc. v. DataQuick Info. Sys., Inc.</u>, 492 F.3d 520, 527 (4th Cir. 2007). The scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all — the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." <u>Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.</u>, 142 F.3d 188, 193 (4th Cir. 1998). This court "is limited to determine whether the arbitrators did the job they were told to do — not whether they did it well, or correctly, or reasonably, but simply whether they did it." <u>Remmey v. PaineWebber, Inc.</u>, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotations omitted). The FAA provides only four limited grounds on which a court may vacate an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

10

award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). The Defendants do not allege the Final Award was procured by corruption or that the Tribunal itself was corrupt, but principally that the Tribunal exceeded its powers.

Beyond the FAA, common law grounds for vacating a final arbitration award "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). This high bar is reached only where the disputed legal principle is "clearly defined" and "not subject to reasonable debate," and "the arbitrator refused to apply that legal principle." Jones v. Dancel, 792 F.3d 395, 402 (4th Cir. 2015). A district court may not overturn an arbitration award "just because it believes, however strongly, that the arbitrators misinterpreted the applicable law." Wachovia Sec., LLC v. Brand, 671 F.3d 472, 478 n. 5 (4th Cir. 2012). As the parties seeking relief from the Final Award, the Defendants "bear[] the heavy burden of showing that the arbitrator acted outside the scope of authority granted by the parties in their contract, by issuing an award that simply reflects his own notions of economic justice." Jones, 792 F.3d at 405 (internal quotations omitted); Jih v. Long & Foster Real Estate, Inc., 800 F. Supp. 312, 317 (D. Md. 1992) (noting "[t]he party moving to vacate the award bears the burden of proof and the showing required to avoid summary

11

confirmation is high" (internal quotations omitted)). Absent a showing of the four limited grounds for vacating the award pursuant to the FAA or a showing of a manifest disregard of the law, a district court may not vacate an arbitration award. See 9 U.S.C. § 9; Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007).

With these high burdens in mind, the court now addresses the pending motions, beginning with those seeking to alter or vacate the Final Award.

### A. DAG Defendants' Motion to Vacate Final Award

The DAG Defendants argue the Tribunal exceeded its authority in finding DAG liable for SmartSky's attorneys' fees, because DAG cannot be liable for: 1) attorneys' fees incurred before DAG was a party to the arbitration; 2) unallocated fees which contain fees for claims against other parties; or 3) attorneys' fees where no damages were awarded against DAG. (Doc. 168 at 5-7.) Additionally, the DAG Defendants argue the Tribunal exceeded its authority in finding DAG liable for SmartSky's legal costs and expenses as well as in assessing the costs of arbitration against DAG. (Id. at 9-11.) SmartSky responds, arguing that the Tribunal did not exceed its authority. (Doc. 184 at 4.)

#### 1. Attorneys' fees before DAG was a party to the Arbitration

The DAG Defendants argue that DAG is not liable for attorneys'

12

fees assessed prior to January 13, 2021, when the DAG Defendants were first included as parties to the arbitration. (Doc. 168 at 5.) According to the DAG Defendants, "[i]t goes without saying that DAG can not be responsible for attorneys' fees of [SmartSky] in the arbitration prior to DAG being parties to the Arbitration." (Id.) SmartSky responds noting the "Tribunal had substantial discretion to award fees, and this Court is not free to substitute its judgment for that of the arbitrators." (Doc. 184 at 6.)

Pursuant to AAA Rule-47(a), "the arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." It is not for this court to question the allocation of attorneys' fees by the Tribunal. See Wells Fargo Advisors, LLC v. Watts, 540 F. App'x 229, 232 (4th Cir. 2013) (noting "a court must defer to the arbitrators' factual findings on attorneys' fees even if the arbitrators do not explain a basis for the precise amount.")[2] This is especially true where the Tribunal considered and rejected the same arguments the DAG Defendants provide in their motion to vacate. See Wells Fargo Advisors, LLC v. Watts, 858 F.Supp.2d 591, 599 (W.D.N.C. 2012) (deferring to arbitrators as the "issue raised by Watts in support of his motion to vacate was raised

---

[2] While the Fourth Circuit does not ordinarily accord precedential value to its unpublished opinions, it has noted that they "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

13

before and decided by the panel.") rev'd in part on other grounds, 540 F. App'x 229 (4th Cir. 2013).

Specifically, the Tribunal found that the DAG entities "operated as alter egos of Respondent [Wireless Systems]." (Doc. 166-1 at ¶ 385.) No Defendant disputes this "alter ego" finding that DAG and Wireless Systems are "one and the same operational enterprise" and the DAG Defendants are "mere instrumentalities of [Wireless Systems]." (Id. at ¶ 300.) Moreover, the Tribunal held all Defendants jointly and severally liable for the underlying misconduct that sparked this dispute and awarded attorneys' fees as it deemed proper. (See id. at ¶ 259) ("[T]he Tribunal holds that [Wireless Systems] (and any alter egos), . . . breached the restrictions in the Teaming Agreement.") Holding an alter ego liable for the same attorneys' fees as the parent enterprise fails to rise to the threshold of requiring vacatur of the Final Award. The DAG Defendants have not alleged any facts showing, nor do the Tribunal's holdings evince, any corruption, misconduct, abuse of power, or manifest disregard for the law. As such, there is no basis upon which to vacate the Final Award's allocation of attorneys' fees.

### 2. Unallocated fees

The DAG Defendants next argue that the Tribunal erroneously awarded $1,496,473.65 in attorneys' fees, "despite [SmartSky] not specifically allocating its time in pursuit of any claim against

DAG or any other party." (Doc. 168 at 6.) After receiving SmartSky's requested attorneys' fees of $1,731,147.50, the Tribunal then reduced that amount based on certain fees it deemed unreasonable, resulting in a fee amount of $1,662,748.50. (Doc. 166-1 at ¶ 389.) The Tribunal then imposed a ten percent reduction in that amount because the performance breach claims "are not subject to statutory fee-shifting and involved development and presentation of certain evidence, even if quite limited, that did not overlap with the statutory claims." (Id. at ¶ 398.) According to the DAG Defendants, "the Tribunal was required to apportion fees in pursuit of [SmartSky's] claims," because the breach of contract claim against Wireless Systems and the statutory claims against all Defendants were not derived from a common nucleus of facts. (Doc. 168 at 6.) SmartSky responds by noting that the Tribunal did find that the claims arose from a common nucleus of facts, the Tribunal is in the best position to determine the allocation of attorneys' fees, and its "decision is due significant deference." (Doc. 184 at 10.)

Again, the DAG Defendants have failed to allege any corruption, abuse of power, or manifest disregard for the law. The Tribunal found that there was a "quite limited" amount of evidence presented for the breach of contract claims that did not overlap with the statutory claims. (Doc. 166-1 at ¶ 398.) In an effort to account for that limited amount, the Tribunal reduced

15

the overall award of attorneys' fees by ten percent. (Id.) In reaching that decision, the Tribunal considered "the record before [it] and all circumstances of the case, including [its] own review of how the evidence and arguments submitted by the parties related to individual counts stated by [SmartSky.]" (Id.) This discretionary reduction in attorneys' fees is within the purview of the Tribunal and is accorded significant deference. See Jones v. Dancel, 792 F.3d 395, 405 (4th Cir. 2015) (rejecting an argument that an arbitrator impermissibly disregarded the law in failing to award attorneys' fees, because "[w]hile it may be debatable whether the arbitrator performed this task 'well,' the record in this case shows that the arbitrator undertook careful analysis of the applicable legal principles"); Okwara v. Dillard Dep't Stores, Inc., 525 S.E.2d 481 (N.C. Ct. App. 2000) (noting that under North Carolina law, a trial court need not apportion attorneys' fees where the plaintiff's claims were inextricably interwoven because "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.")

For these reasons, the DAG Defendants have not carried their heavy burden in showing that the Tribunal exceeded its authority in declining to apportion attorneys' fees.

### 3. Attorneys' fees absent damages

The DAG Defendants' third alleged ground for vacating the

16

Final Award is that DAG cannot be liable for any attorneys' fees because no monetary damages were awarded against DAG. (Doc. 168 at 7.) According to the DAG Defendants, the Tribunal "lacked any authority to find that [SmartSky] was the prevailing party on its [Unfair Deceptive Trade Practices Act] claim where it was not awarded damages." (Id.) SmartSky responds by contending the Unfair Deceptive Trade Practices Act ("UDTPA") does not require an award of monetary damages for a party to be recognized as the prevailing party and the Tribunal's decision is thus consistent with North Carolina law. (Doc. 184 at 12.)

The UDTPA authorizes awards of attorneys' fees as follows:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> > (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. 75-16.1.

A prevailing party must have "suffered actual injury as a result of the violation" of the UDTPA. See Mayton v. Hiatt's Used Cars, Inc., 262 S.E.2d 860, 864 (N.C. App. 1980). The DAG Defendants have pointed to no authority that states "actual injury"

17

requires an award of monetary damages. Rather, showing actual injury is a step before and separate from recovering damages. In order to recover damages for a claim pursuant to the UDTPA, SmartSky must prove it "suffered actual injury as a result of defendants' unfair and deceptive act." Belcher v. Fleetwood Ent., Inc., 590 S.E.2d 15, 18 (N.C. App. 2004). Therefore, while the Tribunal did not award monetary damages based on SmartSky's UDTPA claim against all Defendants, it did note that SmartSky "is clearly the prevailing party and indeed prevailed on virtually all counts stated in its Amended Statement of Claims." (Doc. 166-1 at ¶ 390.) As a reflection of SmartSky's prevailing claims, the Tribunal entered a permanent injunction against the Defendants. (Id. at ¶ 331.) The Tribunal found SmartSky suffered actual injury as a result of the Defendants' actions and awarded attorneys' fees pursuant to the UDTPA upon that basis. (See id. at ¶ 330) (listing the harms which SmartSky suffered because of the Defendants' practices). The Final Award does not reflect a manifest disregard for the law, as the Tribunal's decision to award attorneys' fees to SmartSky, having determined that SmartSky was "clearly the prevailing party," is consistent with North Carolina law and similarly deserves significant deference. (Id. at ¶ 390.)

The DAG Defendants present similar arguments for the Tribunal's award of attorneys' fees for SmartSky's false advertising claims, contending this is not an "exceptional case"

as required by the Lanham Act. (Doc. 168 at 8); see 15 U.S.C. § 1117(a). The DAG Defendants point out that "DAG has made clear . . . that DAG would stipulate that they would not violate the Lanham Act in the future," which makes this case unexceptional. (Id.) SmartSky in response argues the Tribunal found this to be an exceptional case and the Tribunal did not exceed its authority in so finding. (Doc. 184 at 16.)

Pursuant to the Lanham Act, courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014); see Ga.-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015) (noting that while Octane Fitness centered on § 285, "there is no reason not to apply the Octane Fitness standard when considering the award of attorneys' fees under § 1117(a)"). When determining the exceptionality of a case, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations [the Supreme Court] ha[s] identified." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (internal quotations omitted); see Octane Fitness, 572

19

U.S. at 554 (noting that, while <u>Fogerty</u> focused on the meaning of exceptional in terms of the Copyright Act, the Lanham Act's fee-shifting provision is a "comparable context").

Here, the Tribunal found that the Defendants engaged in numerous instances of misconduct and, based on those findings, concluded "this is an 'exceptional case' of false advertising." (Doc. 166-1 at ¶ 342.) Specifically, the Tribunal found that the Defendants' false advertising "goes well beyond simply overstating an attribute or making a false statement about a competing product." (<u>Id.</u> at ¶ 366.) The Defendants' actions resulted in "confusion in the marketplace as to the availability of competing [air-to-ground] Systems, interference with important negotiations [SmartSky] was having with [potential investors], and loss of investor confidence in [SmartSky]." (<u>Id.</u> at ¶ 367.) The Tribunal determined there was sufficient evidence to support a finding that this was an "exceptional case" for purposes of the Lanham Act, and the Defendants have failed to carry their burden in showing that this conclusion reflects a manifest disregard of the law. <u>See</u> <u>Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.</u>, 142 F.3d 188, 194 (4th Cir. 1998) (noting that "even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award.").

Additionally, as SmartSky points out, while DAG would stipulate to not violating the Lanham Act in the future, "agreeing

to not break the law in the future has no bearing" on whether the current misconduct is exceptional. (Doc. 184 at 17.) Because the DAG Defendants have failed to carry their heavy burden and the Tribunal's conclusion shows no manifest disregard for the law, the Tribunal did not exceed its authority in awarding attorneys' fees for SmartSky's Lanham Act claim.

The DAG Defendants present an ancillary argument that the Tribunal erred in awarding SmartSky attorneys' fees for its statutory misappropriation claims as the Tribunal found those claims were waived against DAG. (Doc. 168 at 8.) SmartSky contends in response that the Tribunal awarded no attorneys' fees against the DAG entities for misappropriation, but rather awarded fees against the individual members of the Gross family and found that all of the Defendants willfully misappropriated SmartSky's intellectual property such that the Defendants were liable for attorneys' fees under the UDTPA and the Lanham Act. (Doc. 184 at 15.)

The Tribunal found that, pursuant to the Teaming Agreement, the parties had waived any statutory claims for misappropriation. (Doc. 166-1 at ¶ 315.) This waiver applied to claims between SmartSky and Wireless Systems as signatories to the Teaming Agreement as well as DAG Israel and DAG USA as alter egos of Wireless Systems. (Id. at ¶ 316.) The Teaming Agreement waiver does not apply to the Gross family, and claims for misappropriation

21

"may, however, be asserted against the Grosses who were not party to the Teaming Agreement." (<u>Id.</u> at ¶ 360.)

Although DAG is not liable for claims of misappropriation beyond the Teaming Agreement, it may still be held liable for attorneys' fees pursuant to the UDTPA (if SmartSky is the prevailing party) and the Lanham Act (if this is an "exceptional case") even if SmartSky received no monetary damages from DAG. As discussed above, the Tribunal found that SmartSky was the prevailing party and that this is an exceptional case. Therefore, while the DAG entities are not liable for damages for the statutory misappropriation claims, the Teaming Agreement does not absolve them of joint and several liability for the attorneys' fees. Additionally, there is no evidence that the Tribunal's decision to allocate the attorneys' fees represents a manifest disregard for the law or results from corruption or partiality. As such, the DAG Defendants' motion to vacate on this ground is denied.

### 4. Liability for legal costs and arbitration

The DAG Defendants lastly contend that the court should vacate the Final Award because the Tribunal exceeded its authority in finding DAG liable for SmartSky's costs and for the cost of arbitration. (Doc. 168 at 9-10.) SmartSky responds that AAA Rule 47 authorizes the Tribunal to grant the relief it deems just and that the allocation of costs is the result of the Tribunal determining an equitable outcome. (Doc. 184 at 19.)

22

The Tribunal awarded SmartSky $467,202.94 in legal costs and expenses against all Defendants. (Doc. 166-1 at ¶ 402.) That award consists of:

1. $265,934.00 for SmartSky's technical expert, Jim Proctor;

2. $115,894.28 for SmartSky's damages expert, Bryce Cook;

3. $46,570.18 for SmartSky's hotel expenses;

4. $21,056.35 in deposition expenses; and

5. $17,748.12 in court reporter fees for the arbitration.[3]

(Doc. 168 at 10.)

The DAG Defendants argue that under North Carolina law SmartSky is only entitled to expert fees for the time the expert spent providing testimony at trial. (Doc. 168 at 10); N.C. Gen. Stat. 7A-305(d). Alternatively, the DAG Defendants argue, if federal law were to apply, SmartSky cannot recover expert fees because they cannot be assessed as a cost. (Id.); 28 U.S.C. § 1920. SmartSky responds, noting that neither statute applies; rather, the AAA Rules govern the ability of the Tribunal to award fees and costs.

North Carolina law cited by the DAG Defendants only applies to "civil action in the superior or district court." N.C. Gen. Stat. 7A-305(d). As this is a Final Award entered after a private

---

[3] The DAG Defendants concede that court reporter fees for depositions and the arbitration would be recoverable. (Doc. 168 at 10.)

arbitration hearing outside of a superior or district court, the statute is inapplicable. The same is true for 28 U.S.C. § 1920, which only relates to costs that a "judge or clerk of any court in the United States may tax." Arbitration proceedings are governed by the FAA, the AAA Commercial Rules, and any agreements made between the parties.

SmartSky points to AAA Rule 47(a) as setting forth the Tribunal's ability to award costs. Rule 47(a) provides:

> (a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

By its express language, Rule 47(a) itself places no limits on the relief the Tribunal may provide other than that such relief be within the scope of the agreement of the parties. The DAG Defendants offer no counter to Rule 47(a)'s broad language other than directing the court to Rule 47(c) which provides:

> (c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator may apportion such fees, expenses, and compensation amount the parties in such amounts as the arbitrator determines is appropriate.

(Doc. 191 at 2.)

Rule 47(c) appears to be an additional consideration to Rule 47(a, providing that the Tribunal may grant "any remedy or relief that it deems just" pursuant to Rule 47(a) and must also assess any applicable "fees, expenses, and compensation provided in

24

Sections R-53, R-54, and R-55" pursuant to Rule 47(c). Rule 53 focuses on administrative fees and is thus inapplicable here. Similarly Rule 55 relates to the compensation of the arbitrators and is inapplicable. The DAG Defendants' argument thus rests on Rule 54, which provides:

> The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be born equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

The DAG Defendants thus argue that the Tribunal lacked authority under North Carolina law, Federal law, and the AAA Rules to award expert fees and "[a]s a result, the entire arbitration award must be vacated." (Doc. 191 at 3.) However, the Tribunal informed the parties well before entering the Final Award that it would "exercise its authority to allocate the costs of arbitration in its final award in light of the full factual record established at the hearing as well as the circumstances of these proceedings." (Doc. 166-4 at ¶ 8.) Because of the Defendants' actions, the Tribunal found that SmartSky was required "to prove through percipient and expert witnesses and voluminous documents, *inter alia*, its ownership of the [air-to-ground] Products and derivatives, Respondents' improper use of [SmartSky's]

25

Intellectual Property, and [SmartSky's] need for temporary and permanent injunctive relief." (Doc. 166-1 at ¶ 393.) As permitted by Rule 47(a), and consistent with the Tribunal's factual findings, the Tribunal determined awarding expert fees and costs was a just and equitable form of relief. Rule 54 functions in the event expenses of witnesses are not considered under Rule 47(a). For instance, had the Tribunal not determined that an award of expert fees to SmartSky was just and equitable pursuant to Rule 47(a), it would be prohibited from assessing those costs pursuant to Rules 47(c) and 54. However, the Tribunal determined that shifting those costs to the Defendants was warranted in this case, and it is not for this court to determine whether the Tribunal's allocation of costs is correct. It "is enough that the Arbitrator grappled with and resolved [the issue at hand] at all," and nothing indicates the Tribunal baselessly allocated these costs. <u>Goins v. TitleMax of Va., Inc.</u>, No. 1:19CV489, 2021 WL 3856149, at *2 (M.D.N.C. Aug. 27, 2021).

For the foregoing reasons, because the DAG Defendants have failed to carry their heavy burden of showing one of the limited grounds for vacating an arbitration award provided by the FAA or by showing any manifest disregard of the law as required at common law, the DAG Defendants' Motion to Vacate the Final Award (Doc. 167) is denied.

**B. Wireless Systems Defendants' Motion to Vacate Final Award**

The Wireless Systems Defendants' contentions can be separated into two categories. First, the Wireless Systems Defendants argue that the Tribunal did not properly consider evidence they presented and erred in refusing to allow the Defendants to engage in discovery and obtain evidence on certain claims. (Doc. 174 at 6-23.) Second, they present nearly identical arguments as the DAG Defendants, arguing that the Tribunal exceeded its power in finding that Wireless Systems' dismissal of counterclaims was with prejudice, in awarding SmartSky's expenses and costs, and by not properly allocating SmartSky's attorneys' fees amongst claims and between defendants. (Id. at 23-25.) SmartSky responds by arguing that the Tribunal did not disregard the law in denying the Wireless Systems Defendants' attempt to engage in discovery and that the Tribunal's decision should receive significant deference. (Doc. 180 at 14.) As to the Wireless Systems Defendants' second category of claims, SmartSky presents the same arguments as set forth in its opposition to the DAG Defendants' motion to vacate the award discussed above. (Id. at 18.)

To the extent the Wireless Systems Defendants argue the Tribunal erred in denying various procedural motions, their motion to vacate the Final Award must be denied, as it is not for this

court to relitigate the claims presented in the arbitration.[4]  A court "must defer to the [arbitration] panel's discovery and evidentiary rulings even if the court would have ruled differently." Wells Fargo Advisors, LLC v. Watts, 858 F.Supp.2d 591, 599 (W.D.N.C. 2012) (citing Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) (noting "[c]ourts are not free to overturn an arbitral result because they would have reached a different conclusion if presented with the same facts.")) rev'd in part on other grounds, 540 F. App'x 229 (4th Cir. 2013).  An "arbitrator's procedural ruling may not be overturned unless it was in bad faith or so gross as to amount to affirmative misconduct." Wachovia Sec., LLC v. Brand, 671 F.3d 472, 479 (4th Cir. 2012).  Vacatur of a final award based on the procedural orders issued by the Tribunal during arbitration requires proof that the Tribunal "intentionally contradicted the law," rather

---

[4] Specifically, the Wireless Systems Defendants challenge the Tribunal's decision to deny their application to file a cease-and-desist motion and a motion to compel discovery relating to allegations that SmartSky had "hacked" products purportedly belonging to Wireless Systems. (Doc. 174 at 6.)  The Tribunal reached this determination because DAG had filed the motion well into the discovery process just weeks before the hearing. Nevertheless, the Tribunal did allow DAG to put on extensive evidence on the issue of hacking during the hearing and ultimately concluded that SmartSky had not hacked Wireless Systems' software, but rather SmartSky "overwrote" some of Wireless Systems' software. (Doc. 166-1 at ¶ 338.) Importantly, the motion to compel discovery was filed by DAG, not Wireless Systems; therefore, it is unclear why Wireless Systems seeks to vacate the Final Award based on a motion it did not file. (Doc. 166-1 at ¶ 74.)  The Wireless Systems Defendants also argue that the Tribunal erroneously found that Wireless Systems' dismissal of its counterclaims was with prejudice. (Doc. 174 at 21.)  The court addressed this contention earlier. See n. 1 supra.

than simply made a "mistake." (Id.) To allow the Wireless Systems Defendants to participate in a thorough arbitration hearing and then relitigate the same procedural issues in this court "would frustrate the purpose of having arbitration at all." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). To be sure, the Wireless Systems Defendants assert no factual allegations of intentional misconduct undertaken by the Tribunal. See Wachovia Sec., LLC, 671 F.3d at 479 ("Wachovia's challenge to the Panel's procedure would nevertheless fail because it does not allege misconduct.")

Because the Tribunal's decision on procedural issues such as discovery disagreements and the presentation of evidence garners significant deference and the Wireless Systems Defendants have alleged no specific instances or facts tending to show the Tribunal engaged in affirmative misconduct, the Wireless Systems Defendants' motion to vacate based on the procedural category of their arguments is denied.

As to the second category of grievances put forth by the Wireless Systems Defendants, they are identical to the arguments raised by the DAG Defendants in relation to the Tribunal's award of expenses, costs, and attorneys' fees to SmartSky. (Doc. 174 at 23-25.) Specifically, the Wireless Systems Defendants argue the Tribunal exceeded its power in imposing expert fees in contravention of North Carolina and federal law and by not

29

separately allocating attorneys' fees to each party for each claim. (Id.)  To the extent the Wireless Systems Defendants' motion is based on the same arguments presented by the DAG Defendants, it is denied for the reasons set forth above.

### C.    Smartsky's Motion to Confirm Final Award

SmartSky argues there is no basis to modify, vacate, or correct the Final Award and, because the court has jurisdiction to confirm the Final Award, it should do so.  (Doc. 166 at 11.) Pursuant to the FAA, to prevail on a motion to confirm a final award, the movant must petition the court within one year of the arbitration award, provide notice to the adverse party, and file the award order, the arbitration agreement, and any time extension with the motion.  See 9 U.S.C. §§ 9, 13.  Here, SmartSky filed its motion containing all required documents four days after the Final Arbitration Order.  (Doc. 166.)  Notice of this motion was provided to the Defendants.  (Id. at 16.)

Having reviewed the Final Award, and finding no evidence of fraud, corruption, misconduct, or manifest disregard of the law, the court must confirm the award.  See 9 U.S.C. § 9; Benchmark Elecs., Inc. v. Myers, No. GJH-19-242, 2019 WL 6528587, at *7 (D. Md. Dec. 3, 2019) ("Because the Court will not vacate the arbitration award, it must confirm it."); JTH Tax LLC v. Pitcairn Franchise Dev., LLC., No. 2:21cv135, 2021 WL 3173572, at *9 (E.D. Va. July 27, 2021) ("Therefore, the court must grant an arbitration

30

award unless the award is vacated, modified, or corrected."
(internal quotations and alterations omitted)). Because there is
no cause to vacate the Final Award, SmartSky's motion is granted.
Smiley v. Forcepoint Fed., LLC, No. 3:21CV500, 2021 WL 5143898, at
*3 (E.D. Va. Nov. 3, 2021) (confirming arbitration award because
it was not vacated).

### D. Motions to Seal

The Wireless Systems Defendants seek to seal certain exhibits
filed with their Brief in Support of Their Motion to Vacate and
Modify the Arbitrators' Final Award "and to seal the Brief that
quotes the exhibits." (Doc. 177.) SmartSky responds by agreeing
that the Proposed Sealed Documents included in the Wireless Systems
Defendants' motion "should be sealed by the Court to the extent
necessary to avoid disclosure on the public docket," but that many
of the documents are "irrelevant to the pending Motion to Vacate,
and should therefore be struck," pursuant to Local Rules 5.4 and
5.5. (Doc. 179 at 2.) SmartSky separately moves for leave to
file sealed portions of its reply in opposition to the Wireless
Systems Defendants' motion to vacate the arbitrator's Final Award.
(Doc. 182.)

When a party makes a request to seal judicial records, a
district court "must comply with certain substantive and
procedural requirements." Va. Dep't of State Police v. Washington
Post, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the court

31

Case 1:20-cv-00834-TDS-LPA   Document 194   Filed 02/07/22   Page 31 of 44

must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. Id. "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Id. (internal quotation marks and alteration omitted). "While the common law presumption in favor of access attaches to all judicial records and documents, the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal quotations and citations omitted). Generally, the public interest in disclosure heightens as the underlying motions are directed more to the merits and as the case proceeds toward trial. See Washington Post, 386 F.3d at 578–79 (observing that the public has a First Amendment right of access to materials submitted in connection with a summary judgment motion in a civil action (citing Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)).

"The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." Id. at 575;

32

see Press-Enterprise Co. v. Superior Ct. of Ca. for Riverside Cnty., 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion."). The public's right of access "may be abrogated only in unusual circumstances." Stone, 855 F.2d at 182. Evaluating whether these "unusual circumstances" exist in a particular case is a fact-based inquiry conducted in light of the "specific facts and circumstances" of the case at issue. See Washington Post, 386 F.3d at 579.

"One exception to the public's right of access is where such access to judicial records could provide a 'source[] of business information that might harm a litigant's competitive standing.'" Woven Elecs. Corp. v. Advance Grp., Inc., 1991 WL 54118, at *6 (4th Cir. Apr. 15, 1991) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)). "[M]any courts have considered the trade secret status of testimony or materials submitted to a court a significant private interest to be weighed against the common law, or even the First Amendment, right of public access that would otherwise apply to them." Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 581–82 (E.D. Va. 2009) (collecting cases)); Woven Elecs. Corp., 1991 WL 54118, at *6-7 (holding the district court erred in denying motion to close the courtroom to prevent disclosure of trade secrets at trial and remanding the case for determination as to what portions of the district court record must be sealed in order to prevent further

33

disclosure); ATI Indus. Automation, Inc. v. Applied Robotics, Inc., 801 F. Supp. 2d 419, 427-28 (M.D.N.C. 2011) (finding the public had a First Amendment right of access to documents submitted in connection with motions to dismiss for lack of personal jurisdiction and improper venue, but holding that the sealing of eight exhibits was appropriate in order to protect trade secrets contained therein); Longman v. Food Lion, Inc., 186 F.R.D. 331, 335 (M.D.N.C. 1999) (noting documents could "be sealed even given the public access requirements because they contain Defendants' trade secrets, confidential business information, or information protected by attorney-client privilege").

The Wireless Systems Defendants assert that many of the exhibits listed, while not necessarily confidential themselves, included testimony or references to otherwise confidential exhibits. (Doc. 177 at 2.) At the start of arbitration, all parties agreed that the entire arbitration hearing and the resulting transcript would be treated as confidential pursuant to a Protective Order governing confidential information. (Id.) The claims forming the basis of this case revolve around trade secrets and closely held and highly valuable intellectual property, and from the beginning both parties maintained the importance of confidentiality. For instance, the Wireless Systems Defendants advise that they seek to seal the listed exhibits because they "do not want to inadvertently violate the Protective Order,"

34

especially because SmartSky had already "filed a motion against them for sanctions during the arbitration proceeding for violating the Protective Order." (Id.)

SmartSky contends that many of these documents are irrelevant to the pending motion and should be struck. (Doc. 179 at 2.) However, motions to strike are appropriate only for pleadings and not for these documents. See 5A C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1380 (3d ed. 2021); Charleston Waterkeeper v. Frontier Logistics, L.P., 488 F. Supp. 3d 240, 260 (D.S.C. 2020); Delta Consulting Grp., Inc. v. R. Randle Const., Inc., 554 F.3d 1133 (7th Cir. 2009). Furthermore, because the court considered these documents in ruling on the cross motions to vacate or confirm the award and relied on some of the background information provided by the designated exhibits in deciding the motions to vacate, it cannot say these documents are irrelevant. Therefore, the Wireless Systems Defendants' motion to seal certain exhibits (Doc. 177) is granted and SmartSky's request to strike documents is denied.[5]

SmartSky seeks to file under seal portions of its brief in opposition to the Wireless Systems Defendants' motion to vacate the arbitrator's Final Award, and for similar reasons its motion

---

[5] SmartSky also recognizes that to the extent the court does not strike the documents, they should be sealed "to ensure the sensitive and confidential business information contained therein is not publicly displayed." (Doc. 179 at 2.)

is granted.  (Doc. 182.)  The Defendants have filed no brief in opposition.  SmartSky advises that its opposition brief includes "confidential, proprietary, and sensitive business information," and disclosure "would potentially violate a contractual confidentiality agreement" between SmartSky and Wireless Systems. (Id. at 1-2.)  The information contained in SmartSky's opposition brief details confidential information, including names of prospective clients, SmartSky's customer solicitation efforts, and its overall business strategy in a highly competitive and fast-moving industry.  Because sealing is necessary to protect the confidentiality of the proprietary business information contained in SmartSky's opposition brief, Smartsky's motion to seal (Doc. 181) is granted.  See LifeNet Health v. LifeCell Corp., No. 2:13cv486, 2015 WL 12516758, at *2 (E.D. Va. Jan. 9, 2015) (stating "in a case involving trade secrets, [] the record should 'be sealed to the extent necessary to prevent the release of trade secrets.'" (quoting Woven Elecs., 1991 WL 54118, at *6.)); Valley Broad. Co. v. United States Dist. Court for Dist. of Nev., 798 F.2d 1289, 1294 (9th Cir. 1986) (noting the presence of "trade secret materials" would "counsel[] against" the common law right of public access); Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983) ("[c]ourts have carved out several distinct but limited common law exceptions to the strong presumption in favor of openness, including trade secrets which are a recognized

36

exception to the right of public access to judicial records" (internal quotations omitted)).

## III. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the DAG Defendants' Motion to Dismiss or Compel Arbitration of Complaint and Amended Complaint (Doc. 160) is DENIED as moot; the DAG Defendants' Motion to Vacate Arbitration Award (Doc. 167) is DENIED, and the Wireless Systems Defendants' Motion to Vacate and Modify the Arbitrators Final Award (Doc. 170) is DENIED.

IT IS FURTHER ORDERED that the Wireless Systems Defendants' Motion to Seal Exhibits (Doc. 177) is GRANTED, and SmartSky's Motion to Seal (Doc. 181) SmartSky's Opposition to the Wireless Systems Defendants' Motion to Vacate and Modify the Arbitrators' Final Award (Doc. 180) is GRANTED.

IT IS FURTHER ORDERED that SmartSky's Motion to Confirm Arbitration Award and for Entry of Final Judgment (Doc. 166) is GRANTED and the Final Award is CONFIRMED.

IT IS FURTHER ORDERED that in accordance with the confirmation of the Award, FINAL JUDGMENT BE ENTERED AS FOLLOWS in favor of SmartSky and against the Defendants Wireless System Solutions, LLC ("Wireless Systems"), DAG Wireless Ltd. ("DAG Wireless"), DAG Wireless USA, LLC ("DAG Wireless USA"), Laslo Gross, Susan Gross, and David Gross (collectively "Defendants"):

37

1.   SmartSky is awarded a judgment for damages and other monetary relief against the Defendants as follows

   a.   Ten Million Dollars ($10,000,000.00) in damages against Wireless Systems on SmartSky's claims for breach of the April 11, 2019 Teaming Agreement (the "Teaming Agreement") between SmartSky and Wireless Systems and for breach of other agreements between SmartSky and Wireless Systems; and

   b.   the following amounts are awarded to SmartSky against all of the Defendants (Wireless Systems, DAG Wireless, DAG Wireless USA, Laslo Gross, Susan Gross, and David Gross), jointly and severally:

      i.   $1,963,676.59 for legal fees and expenses incurred by SmartSky;

      ii.   $525,215.45 for Arbitration costs incurred by SmartSky; and

      iii.   $60,000.00 in sanctions for the Defendants' violations of interim orders of the Tribunal appointed in the Arbitration.

2.   Wireless Systems, DAG Wireless, DAG Wireless USA, Laslo Gross, Susan Gross, and David Gross, and each of them, as well as persons or entities acting in concert or participation with them or otherwise on their behalf, including their successors or assigns, shall immediately cease and desist and are hereby

38

permanently enjoined from engaging, directly or indirectly, in any
of the following activities or conduct:

a. making, causing to be made, developing, certifying
or attempting to certify with any government agency, using,
copying, modifying, marketing, promoting, offering to sell,
selling, or distributing any or all "Product" or "Developed
IP" (as those terms are defined in the Teaming Agreement and
as the definitions are incorporated below) developed or
produced by Wireless Systems, DAG Wireless, or DAG Wireless
USA pursuant to or in connection with any agreement executed
by SmartSky and Wireless Systems, or derivatives of such
"Product" or "Developed IP," for use within the "SSN Field of
Use" (as those terms are defined in the Teaming Agreement and
as the definitions are incorporated below);

b. making or causing to be made any use or disclosure
of any or all "Confidential Information" of SmartSky, "SSN
IP," or "SSN Tools" (as those terms are defined in the Teaming
Agreement and as the definitions are incorporated below), or
derivatives thereof;

c. making or causing to be made any use or disclosure
of information of SmartSky subject to a non-disclosure
agreement which they, or any of them, executed with SmartSky
including that Non-Disclosure Agreement dated January 15,
2019;

d. passing off all or any part of SmartSky's
"Confidential Information," "Product," "SSN IP," "SSN Tools,"
or "Developed IP" (as those terms are defined in the Teaming
Agreement and as the definitions are incorporated below),
including derivatives thereof, as the property of Wireless
Systems, DAG Wireless, DAG Wireless USA, Laslo Gross, Susan
Gross, and/or David D. Gross, including their successors and
assigns; and/or

e. engaging in any other false or misleading
commercial advertising, promotions, or representations,
including but not limited to statements made directly or
indirectly through the use of pseudonyms or proxies, on
websites, in press releases, or in interviews, which:

i. state or suggest that Wireless Systems, DAG
Wireless, DAG Wireless USA, Laslo Gross, Susan Gross, and
David Gross, or any of them or their successors or assigns,

39

have developed, have obtained regulatory certification of, or have or will have available for purchase or sale any air-to-ground wireless communications system or product that uses or is based upon SmartSky's "Confidential Information," "Product," "SSN IP," "SSN Tools," or "Developed IP," or derivatives thereof, in the "SSN Field of Use" (as those terms are defined in the Teaming Agreement and as the definitions are incorporated below);

   ii. attempt to pass off or represent any "Confidential Information" of SmartSky, "SSN IP," "SSN Tools," "Developed IP," or "Product" (as those terms are defined in the Teaming Agreement and as the definitions are incorporated below), or derivatives thereof, as developed by or belonging to Wireless Systems, DAG Wireless, DAG Wireless USA, Laslo Gross, Susan Gross, and/or David Gross, or their successors or assigns; and/or

   iii. disparage SmartSky or attempt to discourage any person or entity from doing business with SmartSky.

3. The Court sets forth the following definitions from the Teaming Agreement as referenced in the permanent injunction above:

  a. "Product" is defined as "the production units [SmartSky] commissions [Wireless Systems] to develop, procure, integrate, produce, deliver, and support exclusively for [SmartSky] for the SSN Field of Use as defined herein."

  b. "SSN Field of Use" is defined as "communications networks, information exchange, and enabling information tools, all for use in aviation related operations including air-to-surface, surface-to-air, and air-to-air communications."

  c. "SSN IP" is defined as follows:

"(a) all Intellectual Property of [SmartSky] existing prior to, or invented or developed by, for, or on behalf of [SmartSky] independent of this Agreement, (b) Work Product

40

and Developed IP (except as otherwise provided in a SOW), (c) any Intellectual Property as described in the applicable SOW [Statement of Work] as SSN IP and owned by SSN, and (c) any Intellectual Property set forth in the attached Exhibit A."

  d. "Intellectual Property" is defined as:

"Intellectual Property means all of the following, whether protected, created or arising under the laws of any domestic or foreign jurisdiction: (a) patents, patent applications (along with all patents issuing thereon), statutory invention registrations, and divisions, continuations, continuations-in-part, and substitute applications of the foregoing, and any extensions, reissues, restorations and reexaminations of the foregoing, and all rights therein provided by international treaties or conventions including, without limitation, the exclusive right to make, use and sell, (b) know-how, ideas, processes, discoveries, methods, copyrights, mask work rights, database rights and design rights, whether or not registered, published or unpublished, and registrations and applications for registration thereof, and all forms of intellectual property rights therein whether provided by international treaties or conventions or otherwise, (c) trade secrets, (d) Marks, (e) all rights arising from or in respect of domain names and domain name registrations and reservations, and (f) all other applications and registrations related to any of the rights set forth in the foregoing clauses (a)-(f) above."

  e. "Developed IP" is defined as:

"For each SOW [Statement of Work agreed to by {SmartSky} and {Wireless Systems}], the Parties agree to cooperate in good faith to identify and detail the scope of the work to be performed under the applicable SOW and to specify the ownership rights to all Work Product. The Parties agree that in the absence of any such specification of ownership in the applicable SOW, any Work Product (and all Intellectual Property rights contained therein) produced for such SOW, excluding any WSS IP, shall be owned by [SmartSky]. Any Work Product, and Intellectual Property rights contained therein, owned by [SmartSky] shall be referred to hereafter as 'Developed IP'. Further, [Wireless Systems] hereby acknowledges and agrees that [SmartSky] shall own all right, title and interest in and to the Product, and all Intellectual Property rights contained therein, except for [Wireless Systems'] ownership rights in any WSS IP incorporated into the Product, which [SmartSky] shall have a license to pursuant

41

to Section 8.03. Additionally, and notwithstanding anything in the Agreement or a SOW that may be interpreted to the contrary, [Wireless Systems] hereby acknowledges and agrees that [SmartSky] shall be the exclusive owner of all right, title and interest in and to any and all developments, improvements, enhancements, or derivatives to any SSN IP, including without limitation, [SmartSky's] patent portfolio set forth in Exhibit A."

     f.    "Work Product" is defined as follows:

"all inventions, including improvements/enhancements, discoveries, ideas, technologies, know-how, work product, concepts, material, methods, processes, disclosures, Software, firmware, Materials, molds, fixtures, test equipment, computer language, programming aids, documentation, or any other property conceived, developed, originated, fixed or reduced to practice in connection with, or as a result of, the services as ordered through a Purchase Order and performed under a SOW, whether or not patentable, copyrightable or subject to mask work rights or other forms of protection."

     g.    "Confidential Information" is defined as:

"... the terms and conditions of this Agreement, the existence of the discussions between the Parties, any information disclosed in connection with the development and integration projects being undertaken as described above, and any proprietary information a Party considers to be proprietary, including but not limited to, information regarding each Party's product plans, product designs, product costs, product prices, finances, marketing plans, business opportunities, personnel, research and development activities, know-how and pre-release products; provided that information disclosed by the disclosing Party ('Disclosing Party') in written or other tangible form will be considered Confidential Information by the receiving Party ('Receiving Party') if such information is conspicuously designated as 'Confidential,' 'Proprietary' or a similar legend, or if the circumstances of disclosure would reasonably indicate such treatment. Information disclosed orally shall only be considered Confidential Information if: (i) identified as confidential, proprietary or the like at the time of disclosure, and (ii) confirmed in writing within thirty (30) days of disclosure."

h.   "SSN Tools" is defined as:

"Any such Materials, tools, equipment or facilities furnished
to [Wireless Systems] by or on behalf of [SmartSky] or
purchased by [SmartSky] from [Wireless Systems] (through a
separate Purchase Order or as an item under a SOW) for use in
connection with the performance by [Wireless Systems]
hereunder (collectively the 'SSN Tools') shall be held by
[Wireless Systems] as [SmartSky's] property and shall not be
used by [Wireless Systems] except for the purpose of [Wireless
System's] performance under the applicable Purchase Order and
SOW."

4.   The Award also required the Defendants to do the
following within fifteen (15) business days from the date of the
Award (or by October 22, 2021), which is also confirmed as part of
this Order and Final Judgment:

a.   take all actions necessary to ensure that the
Federal Communications Commission ("FCC") expeditiously
transfers control of any and all FCC certification grants
associated with the grantee code 2AWXX to SmartSky pursuant
to the procedures set forth in 47 C.F.R. § 2.929(d) and FCC
Office of Engineering and Technology Knowledge Database
publication no. 204515; and provide SmartSky with the
current, valid Grantee Code Registration Number for grantee
code 2AWXX; and

b.   at their own expense, destroy all "Confidential
Information" of SmartSky, "SSN IP," and "Developed IP" (as
those terms are defined in the Teaming Agreement) currently
in their possession or in the possession of entities
controlled by, affiliated with, or directed by them, and
provide written certification to SmartSky that all such
material has been destroyed.

It IS FURTHER ORDERED that all of Wireless Systems'
counterclaims alleged against SmartSky in this lawsuit are
DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder
                                        United States District Judge

February 7, 2022